# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

CHERYL A. WEST,            )
                                )
      Plaintiff/Appellee,       )           Appeal No.
                                )           M1998-00725-COA-R3-CV
v.                         )
                                )           Warren County Circuit
DANNY LAMAR WEST,     )           No. 9307
                                )
      Defendant/Appellant.    )
                                )

**FILED**

**January 27, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT
FOR WARREN COUNTY
AT MCMINNVILLE, TENNESSEE

THE HONORABLE CHARLES D. HASTON, PRESIDING

BERNARD K. SMITH
P.O. BOX 490
MCMINNVILLE, TENNESSEE 37111

THOMAS F. BLOOM
500 CHURCH STREET, 5TH FLOOR
NASHVILLE, TENNESSEE 37219

ATTORNEYS FOR PLAINTIFF/APPELLEE

ROBERT W. NEWMAN
GALLIGAN & NEWMAN
309 WEST MAIN STREET
MCMINNVILLE, TENNESSEE 37110

ATTORNEY FOR DEFENDANT/APPELLANT

## VACATED AND REMANDED

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, P. J.
KOCH, J.

# OPINION

In this divorce case, Danny Lamar West ("Husband") appeals the trial court's decision to award post-divorce alimony to his former wife, Cheryl Ann McPeak West ("Wife"). For the following reasons, we vacate the award

of alimony and remand.[1]

The parties were married in November 1993.  It was the second marriage for both and no children were born of the union.  Husband had a minor child from his previous marriage.  In May 1997, the parties separated.

Wife filed the underlying complaint for divorce in August 1997.  The stated grounds for the divorce were inappropriate marital conduct and irreconcilable differences.   As relief, the complaint prayed for an equitable division of property and attorney fees.  It also sought support *pendente lite*, or alternatively, that Husband pay the parties' debts pending a final hearing.

On August 15, 1997, after a hearing in which Husband appeared *pro se*, the trial court entered an order for support *pendente lite* which required Husband to pay Wife $100 per week pending the final hearing in the case.  The court also ordered Husband to apply the parties' income tax refund to their joint indebtedness of over $40,000.  This order was signed by both parties and  Wife's counsel.

After Husband failed to answer the complaint, Wife moved for a default judgment.  On November 14, 1997, the trial court entered an order granting Wife judgment by default.  The order stated that Husband had personally appeared at the August 15 hearing and had entered into an agreed order for temporary support but that Husband had failed to answer the complaint or otherwise defend as provided by law.

After a December 16, 1997 hearing which Husband likewise did not attend, the trial court entered a final decree on January 2, 1998.  The court awarded Wife an absolute divorce, the parties' home, all personal property in her possession, a 1995 Astro Van, a 1983 Chevy S10 pick-up, and a 1988 Chris Craft boat.  Wife was ordered to assume and continue to pay the approximately $43,000 in  debts which arose during the marriage.  The parties had incurred the debts to purchase the van, the S10, the boat and their home.

---

[1] This appeal is before the court on the technical record and Husband's statement of the evidence.  Tenn. R. App. P. 24(c).

The trial court ordered Husband to pay $2,000 on the debt as an element of alimony. In addition, it ordered Husband to pay $40,000 in alimony at the rate of $150 per week and obtain and maintain life insurance on himself at the face value of $40,000 with Wife as sole beneficiary to insure payment. It also ordered him to pay Wife $750 in attorney fees. The court permanently enjoined Husband from calling, contacting, coming around, harassing or threatening Wife. In addition, it found Husband in contempt for failure to pay the previously adjudicated *pendente lite* spousal support which amounted to $1400. The court ordered that an attachment for contempt be issued and then set a hearing on the matter.

After a hearing on January 9, 1998, the trial court found Husband in contempt for failure to abide by the agreed order for support *pendente lite*, again finding an arrearage in the amount of $1,400, which represented amounts in arrearage from the August 15 order through December 16. The court gave Husband a month to purge himself of the contempt by making the payment.

After a hearing on February 20, the trial court issued another order on February 27, finding Husband in contempt for failure to pay $2,300 in support accrued from August 15 to February 20. The court sentenced Husband to incarceration until he purged himself by payment of that amount. Husband ultimately paid that amount and was released.

Wife filed a petition for contempt on April 30, asserting that Husband had not fully complied with any of the court's support orders. Wife maintained, *inter alia,* that Husband had paid only $468 in alimony payments since February of 1998.

On May 21, 1998, Husband's newly retained counsel filed a motion to set aside the final decree or, alternatively, to terminate his spousal support obligation. Husband argued that he could not afford the alimony awarded because his annual income was only $26,000 and he owed weekly child

support of $ 90.[2]  He also asserted that Wife had only requested alimony until the final hearing on the divorce, not the post-divorce support awarded by the court.

On June 10, 1988, after hearings on both filings, the trial court dismissed Husband's motion to set aside and again found him in contempt for failure to make his weekly alimony payments.  It also found him in contempt for failure to obey the court's January 2 order requiring him to pay $2,000 to a specified lender.  Husband was given thirty (30) days to purge himself of the contempt by making payments on the note or refinancing.  The court determined that Husband's arrearage totaled $1,100 and permitted him to purge the contempt by paying $1,155 by June 26, 1998.  While the court found that Husband had complied with its order to obtain life insurance naming Wife as beneficiary, it held him in contempt for failure to pay the previously awarded $750 in attorney fees.  Husband appealed.

I.

Husband argues on appeal that the trial court erred in awarding Wife the $40,000 in lump sum alimony when she sought only support *pendente lite.*  He maintains that the *sua sponte* award, arising in the context of a default judgment, violated Tenn. R. Civ. P. 54.03, which limits the relief available in default judgments to that sought in the complaint, and was fundamentally unfair.

> Tenn. R. Civ. P. 54.03 states:
>
> A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.  Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings; but the court shall not give the successful party relief, though he may be entitled to it, where the propriety of such relief was not litigated and the opposing party had no opportunity to assert defenses to such relief.

---

[2]Husband's statement of the evidence states that his weekly child support obligation was $93.

"The purpose of the Rule 54.03 requirement is to insure that defendants receive adequate notice of the claim against them." *Rosche v. Von Holton*, 01A01-9012-CH-0046, 1991 WL 74263 at * 3 (Tenn. Ct. App. May 10, 1991) (No Tenn. R. App. P. 11 application filed). Our Supreme Court has enlarged upon this statement, citing a treatise discussing the Rule's federal counterpart:

> The first sentence of Rule 54(c) states that a judgment by default is limited to the relief demanded in the complaint. The theory of this provision is that once the defending party receives the original pleading he should be able to decide on the basis of the relief requested whether he wants to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should he attempt to limit the scope and size of the potential judgment against him by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. In a similar vein, unless all the parties in interest have appeared and voluntarily litigated an issue not within the pleadings, the court should consider only those issues presented in the pleadings. In sum, then, a default judgment may not extend to matters outside the issues raised by the pleadings or beyond the scope of the relief demanded.

*Qualls v. Qualls*, 589 S.W.2d 906, 909-10 (Tenn.1979) (quoting Wright and Miller, *Federal Practice and Procedure*, § 2663 at 99-100 (1973)); *accord Holder v. Drake* 908 S.W.2d 393, 394-95 (Tenn. 1995).

"It is a fundamental rule of law that in order to receive relief, a party must plead it, request it, and prove it in court with the opposing party having the opportunity to offer proof opposing the items requested." *Lewis v. Lewis*, No. 89-287-II, 1990 WL 14022 at *3 (Tenn. Ct. App. Feb. 16, 1990) (no Tenn. R. App. P. 11 application filed). To that end, Tenn. Code Ann. § 36-4-106(a) (Supp. 1999) requires divorce complaints to specify "such other and further relief to which the complainant may think to be entitled" beyond the divorce itself.

Wife's complaint described the relief she sought. The prayers for relief included:

> (C) That the Court make an equitable division of the parties' property if the parties are unable to agree on said division prior to a final hearing in this cause of action;

(D) That the court make an equitable division of the parties' debts and obligations if the parties are unable to agree on said division prior to a final hearing in this cause of action;

(E) That a [sic] the Court required [sic] to Defendant to pay support *pendente lite* to the Plaintiff, or in the alternative, that the Defendant be required to pay any and all of the parties' debts and obligations pending a final hearing in this cause of action, and that a hearing be held on the 15th day of August 1997, at 10:00 o'clock A.M., for the purpose of determining the amount of temporary support the Defendant will be required to pay.

The only other mention of support in the complaint was the following:

Plaintiff avers that she is in need of support *pendente lite* and would hereinafter pray that the Defendant be required to pay her temporary alimony, or in the alternative, that the Defendant be required to pay the parties' debts and obligations pending a final hearing in this cause of action. Further, Plaintiff prays that a hearing be held on the 15th day of August 1997, at 10:00 A.M., for the purpose of determining the amount of support *pendente lite* that the defendant will be required to pay.

It is undisputed that Husband attended a hearing on August 15 in which he agreed to pay support "pending the final hearing of this cause" in the weekly amount of $100. Husband did not attend the hearing on Wife's motion for default judgment. Nor did he attend the subsequent hearing in which the court reached the merits of the complaint, awarded Wife the bulk of the marital property and ordered Husband to pay $40,000 in alimony.

Nothing in the record shows that Husband received notice that Wife sought post-divorce alimony. *Compare Jones v. Jones*, No. 01A01-9806-CV-00298, 1999 WL 248735 at * 2 (Tenn. Ct. App. Apr. 29, 1999)(no Tenn. R. App. P. 11 application filed). Nowhere in the complaint was this monetary relief sought. Nothing in the language framed in Wife's pleadings provided Husband with notice that she desired support beyond the final hearing in the case. *Compare Moore v. Moore*, No. 87-92-II, 1988 WL 63498 at * 2 (Tenn. Ct. App. June 24, 1988) (no Tenn. R. App. P. 11 application filed).

In *Qualls v. Qualls*, 589 S.W.2d at 909, our Supreme Court affirmed the reversal of an award of alimony that was "both different in kind from and exceeded in amount the relief prayed for in the original complaint" as

violative of Tenn. R. Civ. P. 54.03. The Court explained that:

> In this State a divorce may be granted without alimony, and alimony may be granted without decreeing a divorce, there being no necessary or absolute connection between divorce and alimony under the statute, Tenn. Code Ann. § 36-820. *Williams v. Williams,* 146 Tenn. 38, 236 S.W. 938 (1921); *McBee v. McBee,* 48 Tenn. 558 (1870). Therefore, a prayer for general relief is not sufficient to support an award of alimony in a case in which the judgment is taken upon default of the defendant.

*Qualls v. Qualls*, 589 S.W.2d at 909.

Wife's reliance on both *Moore v. Moore*, 1988 WL 63498 at * 2 and *Bulla v. Bulla*, No. 01A0109004-CV-00133, 1990 WL 160291 at * 3 (Tenn. Ct. App. Oct. 24, 1990) (Tenn. R. no App. P. 11 application filed), is misplaced. Neither of those cases involve default judgments; rather they involve the question of whether an issue was tried by consent of both parties. Moreover, in *Moore*, the wife was sufficiently debilitated from schizophrenia during the duration of the parties' marriage to be unable to hold a full time job. Her complaint sought support "until she is able to get straightened out mentally and secure employment." Mrs. Moore had also prayed for *pendente lite* support and for general relief. Thus, the court found that the record supported the conclusion that Mr. Moore had notice that his wife was seeking maintenance and support. *See Moore*, 1988 WL 63498 at * 2. In contrast, Wife's complaint provides no hint of a request for post-divorce alimony.

In *Qualls*, the Court granted relief from the judgment pursuant to Tenn. R. Civ. P. 60.02.[3] We believe such relief is appropriate here. As in

---

[3]Rule 60.02 provides:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to set aside a judgment for fraud upon the court. . . .

*Qualls*, we believe it "only just and reasonable that as a condition to awarding relief . . .under Rule 60.02 the issue of alimony should be reopened in the trial court" and this action should be remanded to permit Wife to make appropriate amendments to her complaint praying for alimony, for Husband to file an answer thereto and for a hearing on the merits of the alimony claim. *See Qualls*, 589 S.W.2d at 910-11; Tenn. Code Ann. § 36-5-101(d) (enumerating the appropriate factors to consider in setting alimony).

II.

Accordingly, we hold that the default judgment entered by the trial court was erroneous insofar as it awarded post-divorce periodic payments of alimony in the absence of a request for such in the complaint. That award is vacated and this case is remanded for proceedings consistent with this opinion. Costs of this appeal are to be taxed to Wife for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
BEN H. CANTRELL,
PRESIDING JUDGE, (M. S.)


_____
WILLIAM C. KOCH, JR., JUDGE

_____